UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

CHRISTINE MARIE TOONEN,

    Plaintiff,

v.                                                Case No.:  2:21-cv-936-DNF

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____

## OPINION AND ORDER

Plaintiff Christine Marie Toonen seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for a period of disability and disability insurance benefits. The Commissioner filed the Transcript of the proceedings ("Tr." followed by the appropriate page number), and the parties filed legal memoranda setting forth their respective positions. Plaintiff also filed a Reply Memorandum. As explained below, the decision of the Commissioner is **REVERSED and REMANDED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## I. Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision

### A. Social Security Eligibility

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505–404.1511, 416.905–416.911.

### B. Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.

*Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Unlike findings of fact, the Commissioner's conclusions of law are not presumed valid and are reviewed under a de novo standard. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994); *Maldonado v. Comm'r of Soc. Sec.*, No. 20-14331, 2021 WL 2838362, at *2 (11th Cir. July 8, 2021); *Martin*, 894 F.2d at 1529. "The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Keeton*, 21 F.3d at 1066.

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful employment. 20 C.F.R. § 404.1520(a)(4)(i), (b); 20 C.F.R. § 416.920(a)(4)(i), (b). At step two, the ALJ must determine whether the impairment or combination of impairments from which the claimant allegedly suffers is "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c); 20 C.F.R. § 416.920(a)(4)(ii), (c). At step three, the ALJ must decide whether the claimant's severe impairments meet or medically equal a listed impairment. 20 C.F.R. § 404.1520(a)(4)(iii), (d); 20 C.F.R. § 416.920(a)(4)(iii), (d). If the ALJ finds the claimant's severe impairments do not meet or medically equal a listed impairment,

then the ALJ must determine whether the claimant has the residual functional capacity ("RFC") to perform her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv), (e)–(f); 20 C.F.R. § 416.920(a)(4)(iv), (e)–(f).

If the claimant cannot perform past relevant work, the ALJ must determine at step five whether the claimant's RFC permits her to perform other work that exists in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), (g), 416.920(a)(4)(v), (g). At the fifth step, there are two ways in which the ALJ may establish whether the claimant is capable of performing other work available in the national economy. The first is by applying the Medical Vocational Guidelines, and the second is by the use of a vocational expert. *Phillips v. Barnhart*, 357 F.3d 1232, 1239-40 (11th Cir. 2004); *Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015).

The claimant bears the burden of proof through step four. *Atha*, 616 F. App'x at 933. If the claimant meets this burden, then the burden temporarily shifts to the Commissioner to establish the fifth step. *Id.*; 20 C.F.R. § 404.1520(a)(4)(v), (g); 20 C.F.R. § 416.920(a)(4)(v), (g). If the Commissioner presents evidence of other work that exists in significant numbers in the national economy that the claimant is able to perform, only then does the burden shift back to the claimant to prove she is unable to perform these jobs. *Atha*, 616 F. App'x at 993.

### C.     Procedural History

Plaintiff filed an application for a period of disability and disability insurance on November 16, 2016, alleging disability beginning on May 20, 2015. (Tr. 143, 467-70). The applications were denied initially and on reconsideration. (Tr. 143, 175). Plaintiff requested a hearing, and on September 20, 2018, a hearing was held before Administrative Law Judge Joseph Doyle. (Tr. 118-42). On November 20, 2018, ALJ Doyle entered a decision finding Plaintiff not under a disability from May 15, 2015, through the date of the decision. (Tr. 179-94). Plaintiff requested review of the decision and on review the Appeals Council remanded the action back to an Administrative Law Judge to further consider Plaintiff's medically determinable impairments, give further consideration to Plaintiff's maximum residual functional capacity, and if warranted expand the record. (Tr. 200-204).

On remand, Administrative Law Judge Maria C. Northington ("ALJ") held a hearing on February 19, 2020. (Tr. 76-117). On April 10, 2020, the ALJ entered a decision finding Plaintiff not under a disability from May 20, 2015, the alleged onset date, through December 31, 2019, the date last insured. (Tr. 209-228). Plaintiff requested review of this decision and on review the Appeals Council remanded the action back to an Administrative Law Judge to give further consideration of Plaintiff's maximum residual functional capacity during the entire period at issue,

give further consideration to the treating and non-treating source opinions, and explain the weight given to such opinion evidence. (Tr. 236-39).

On remand, the ALJ held a hearing on March 1, 2021. (Tr. 46-75). On March 17, 2021, the ALJ entered a decision finding Plaintiff was not under a disability from May 20, 2015, the alleged onset date, through December 31, 2019, the date last insured. (Tr. 15-37). Plaintiff requested review of this decision, but the Appeals Council denied Plaintiff's request on October 14, 2021. (Tr. 1-5). Plaintiff initiated the instant action by Complaint (Doc. 1) filed on December 16, 2021, and the case is ripe for review. The parties consented to proceed before a United States Magistrate Judge for all proceedings. (Doc. 13).

### D. Summary of ALJ's Decision

In this matter, the ALJ found Plaintiff met the insured status requirements of the Social Security Act through December 31, 2019. (Tr. 18). At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 20, 2015, the alleged onset date. (Tr. 18). The ALJ noted that Plaintiff worked part-time in March 2020, but her earnings did not reach the level of substantial gainful activity. (Tr. 18). At step two, the ALJ found that through the date last insured, Plaintiff had the following severe impairments: "polyneuropathy with chronic pain syndrome, controlled migraines/headaches, depression, anxiety, and obesity." (Tr. 18). At step three, the ALJ found that through

the date last insured, Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526). (Tr. 20).

Before proceeding to step four, the ALJ found that through the date last insured, Plaintiff had the following RFC:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant was limited to light work with the ability to occasionally lift and/or carry up to 20 pounds as defined in the regulations, as well as, lift and/or carry 10 pounds frequently. This includes sedentary work as defined in the regulations. The claimant has no limits for sitting in an eight-hour workday. She is capable of standing and/or walking for up to six hours in an eight-hour workday. In the course of work, she should be allowed the ability to optionally alternate between sitting and standing about every 30 to 60 minutes, but such would not cause her to be off-task or leave the workstation. She is able to perform occasional postural functions of climbing ramps/stairs, kneeling, crouching, and stooping. She is to perform no crawling, and no climbing of ladders/ropes/scaffolds. The claimant is to perform no work that would involve hazardous situations such as work at unprotected heights or work around dangerous machinery that may cause harm to self or others. No work with vibratory tools or equipment. No exposure to work environments with bright flashing lights that could trigger migraine, but normal office lighting is not affected. The claimant is to perform no constant fingering, feeling and handling manipulations with the bilateral upper extremities, however, frequent fingering, feeling and handling manipulations remain intact. Secondary to mental impairments, the claimant retains the capacity to understand, remember, and carry-out simple instructions and perform simple routine tasks as consistent with unskilled work. The claimant can make judgments regarding simple work-related decisions. The claimant can respond appropriately to routine

      usual work situations and deal with routine changes in a routine work setting.

(Tr. 23-24).

At step four, the ALJ determined that Plaintiff was incapable of performing her past relevant work as a daycare teacher. (Tr. 35). At step five, the vocational expert testified that considering Plaintiff's age (45 years old on the date last insured), education (at least high school), work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed through the date last insured. (Tr. 35-36). Specifically, the vocational expert found that through the date last insured, Plaintiff could have performed such occupations as:

    (1)   ticket taker, DOT 344.667-010,[1] light, SVP 2

    (2)   non-checking cashier, DOT 211.462-010, light, SVP 2

    (3)   telephone order clerk, DOT 209-567-014, sedentary, SVP 2

    (4)   clerical assistant, DOT 209.587-010, sedentary, SVP 2.

(Tr. 36). The ALJ concluded that Plaintiff had not been under a disability from May 20, 2015, the alleged onset date, through December 31, 2019, the date last insured. (Tr. 37).

---

[1] DOT refers to the *Dictionary of Occupational Titles*.

## II. Analysis

On appeal, Plaintiff raises two issues. As stated by Plaintiff, the issues are: (1) whether the step five determination is supported by substantial evidence; and (2) whether the evaluation of medical source opinions is supported by substantial evidence. (Doc. 23, p. 1).

### A. Step Five Determination

Plaintiff argues that two of the jobs listed by the ALJ in the decision conflict with the RFC determination. Based on Plaintiff's mental impairments, the ALJ limited Plaintiff in the RFC as follows: "retains the capacity to understand, remember, and carry-out simple instructions and perform simple routine tasks as consistent with unskilled work." (Tr. 23). At step five of the sequential evaluation, the ALJ found Plaintiff capable of performing the jobs of ticket taker, non-checking cashier (cashier II), telephone order clerk, and clerical assistant. (Tr. 36). According to the DOT, two of these four jobs – non-checking cashier and telephone order clerk – require a reasoning level of three. *See* 211.462-010 Cashier II, DICOT 211.462-010, 1991 WL 671840; 209.567-014, Order Clerk, Food and Beverage, DICOT 209.567-014, 1991 WL 671794. Plaintiff argues that a reasoning level of three is an apparent conflict with an RFC limitation to simple instructions and simple routine tasks. (Doc. 23, p. 4-5). Plaintiff claims that neither the ALJ nor the vocational expert addressed this conflict. (Doc. 23, p. 4).

The Commissioner concedes that the limitation in the RFC to simple instructions and simple tasks would result in an apparent conflict with respect to the jobs of non-checking cashier and telephone order clerk, both of which require an individual to have a reasoning level of 3. (Doc. 27, p. 7-8). The Commissioner argues that the error is at most harmless because the ALJ identified two other jobs consistent with the RFC and without an apparent conflict with the DOT. (Doc. 27, p. 8-9). The Commissioner further argues that these two remaining jobs exist in significant numbers in the national economy — there are 285,000 positions in the national economy for both of these jobs. (Doc. 27, p. 9).

For any conflict at step five between limitations in an RFC and job requirements as listed in the DOT, "the ALJ has an affirmative obligation to identify any 'apparent' conflict and to resolve it. The failure to properly discharge this duty means the ALJ's decision is not supported by substantial evidence." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1362 (11th Cir. 2018) (quoting SSR 00-4p, 2000 WL 1898704)). An ALJ must ask the vocational expert to identify and explain any conflict between his or her testimony and the DOT. *Id.* at 1363. Moreover, "the ALJ is expected to take notice of apparent conflicts, even when they are not identified by a party, and resolve them." *Id.* at 1363.

In *Viverette v. Comm'r of Soc. Sec.*, 13 F.4th 1309 (11th Cir. 2021), the Eleventh Circuit evaluated whether reasoning level three is consistent with a

limitation to simple routine tasks. The Court held that there is an apparent conflict between an RFC limitation to simple, routine, and repetitive tasks and level 3 reasoning. *Id.* at 1317. The Court added that "[t]his does not mean that there is an actual conflict or that an ALJ is categorically prohibited from including a job with level 3 reasoning in the step five analysis for a claimant with such a limitation. It does mean that the ALJ is required to address the apparent conflict and provide a reasonable explanation for her determination." *Id.* Here, the RFC contained a limitation to simple instruction and simple routine tasks, but the ALJ failed to address this apparent conflict with the jobs of non-checking cashier and telephone order clerk, both of which require level 3 reasoning. Thus, the ALJ erred in listing these two jobs without identifying and resolving the apparent conflict. But the ALJ's failure to address the apparent conflict does not end the matter. *Id.* A court must consider – as the Commissioner urges – whether the error was harmless. *Id.*

"At step five, an ALJ must ascertain whether [the] jobs [that a claimant can perform] exist[ ] in significant numbers in the national economy." *Viverette*, 13 F.4th 1309, 1318 (11th Cir. 2021) (quotations omitted) (citing *Biestek v. Berryhill*, ___ U.S. ___, 139 S. Ct. 1148, 1152 (2019)). Whether there are a significant number of jobs in the national economy is a factual issue to be determined by a judicial officer. *Id.* "Work which 'exists in the national economy' means 'work which exists in significant numbers either in the region where [the] individual lives or in several

regions of the country.'" *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1280 (11th Cir. 2020) (citing 42 U.S.C. § 423(d)(2)(A)). The Social Security Administration approximates the number of positions that exist, whether vacant or filled, and without regard to a claimant's likelihood of being hired. *Id.* (citations omitted). An ALJ may use a vocational expert or other specialist to assist in the step five determination. *Id.* Vocational experts may consult publications such as the DOT – even though it may be outdated – and may also consult other sources to obtain job numbers. *Id.*

The issue here is whether the remaining two jobs exist in significant numbers in the national economy. In *Viverette*, the vocational expert testified that there were 104,000 document preparer positions available nationally, 7,000 final assembler positions available nationally, and 14,000 check weigher positions available nationally. 13 F.4th at 1318. The ALJ referenced the jobs collectively and treated the three occupations (one of which was off the table) cumulatively to determine whether jobs existed in significant numbers in the national economy. *Id.* "In other words, the ALJ did not make a finding about how many final assembler or check weigher jobs were available nationally or whether the number of final assembler and check weigher jobs, either separately or cumulatively, constituted a significant number, absent the document preparer jobs." *Id.* And the Court clarified that this finding "'is a question of fact to be determined by a judicial officer [i.e., the ALJ].'"

*Id.* (citing *Martinez v. Heckler*, 807 F.2d 771, 775 (9th Cir. 1986) and *Brooks v. Barnhart*, 133 F. App'x 669, 670 (11th Cir. 2005)). The Court found:

> Here, the ALJ based her finding of fact on the VE's testimony about a total number of 125,000 jobs, without considering an apparent conflict that affected 104,000 of those jobs. Given that over eighty percent of the jobs presented to the ALJ are affected by the apparent conflict and that we are reviewing the decision of the ALJ (on behalf of the Commissioner) for substantial evidence, we are hesitant to make any factual determinations ourselves about whether the final assembler or check weigher positions exist in significant numbers in the national economy. Where additional (or more specific) agency fact-finding is needed, remand is the appropriate disposition.

*Id.* (citing *Allen v. Barnhart*, 357 F.3d 1140, 1144 (10th Cir. 2004)).

Here, the ALJ similarly referenced the vocational expert's testimony collectively concerning the number of jobs available in the national economy. (Tr. 36). The ALJ referenced the vocational expert's testimony that the ticket taker has 150,000 jobs nationally, the non-checking cashier has 250,000 jobs nationally, the telephone order clerk has 170,000 jobs nationally, and the clerical assistant has 135,000 nationally. (Tr. 36). The ALJ concluded, "[b]ased on the overall record that includes the testimony of the vocational expert, the undersigned concludes that, through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, the claimant was capable of making a successful adjustment to other work that existed in significant numbers in the national economy." (Tr. 36-37). The ALJ did not, however, find the ticket taker or clerical assistant jobs, taken singly or in combination, existed in significant numbers

in the national economy. (Tr. 36-37); *see Viverette*, 13 F.4th at 1318. When considering the number of jobs eliminated based on a level 3 reasoning requirement, the remaining positions constitute approximately only 40% of the total number of jobs in the national economy. Thus, as in *Viverette*, the Court cannot substitute its judgment for that of the ALJ to determine whether without the non-checking cashier and telephone order clerk positions, the other jobs existed in significant numbers in the national economy sufficient to support a finding of not disabled. Remand is warranted on this issue.[2]

## B.  Weight of Medical Opinions

Plaintiff argues that the ALJ erred in affording partial weight to non-examining, testifying neurologist Alexandre Todorov, M.D. and little weight to treating psychiatrist J. Thomas Beld, M.D. (Doc. 23, p. 7). For disability cases filed before March 27, 2017[3] – such as this one – at step four, an ALJ must properly consider treating, examining, and non-examining physician's opinions and weigh

---

[2] At the close of the *Viverette* opinion, the Court found that even if the ALJ had made specific findings on the number of remaining jobs in the national economy, there was an issue with the number of jobs in the remaining two occupations. *Viverette*, 13 F.4th at 1319. When the vocational expert testified about the number of jobs in a certain Standard Occupational Classification ("SOC") code, she did not know the level of reasoning for the other DOT occupations within the SOC code. *Id.* While this issue is not present here, the language of the decision demonstrates that the potential overstatement of the number of jobs was a separate basis to remand the case and therefore does not render the instant case distinguishable. *Id.* at 1318-19.

[3] For disability cases filed after March 27, 2017, new regulations apply and the ALJ no longer defers or gives any specific evidentiary weight to a medical opinion. *See* 20 C.F.R. § 404.1520c(a), 20 C.F.R. § 416.920c(a).

these opinions and findings as an integral part of the ALJ's RFC determination. *See Rosario v. Comm'r of Soc. Sec.*, 877 F. Supp. 2d 1254, 1265 (M.D. Fla. 2012). Whenever a physician offers an opinion about the nature and severity of a claimant's impairments—including the claimant's symptoms, diagnosis, and prognosis; physical and mental restrictions; or what the claimant can still do—the ALJ must state with particularity the weight given to the opinion and the reasons therefor. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178-79 (11th Cir. 2011). Without such an explanation, "it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Id.* (citing *Cowart*, 662 F.2d at 735).

The opinions of treating physicians are entitled to substantial or considerable weight unless good cause is shown to the contrary. *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004). The Eleventh Circuit has concluded that good cause exists when: (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Id.*

Even though examining doctors' opinions are not entitled to deference, an ALJ is still required to consider every medical opinion. *Bennett v. Astrue*, No. 308-CV-646-J-JRK, 2009 WL 2868924, at *2 (M.D. Fla. Sept. 2, 2009) (citing *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987); *Crawford v. Comm'r of Soc. Sec.*, 363

F.3d 1155, 1158-59 (11th Cir. 2004)). "The ALJ is to consider a number of factors in determining how much weight to give to each medical opinion: (1) whether the doctor has examined the claimant; (2) the length, nature, and extent of a treating doctor's relationship with the claimant; (3) the medical evidence and explanation supporting the doctor's opinion; (4) how consistent the doctor's 'opinion is with the record as a whole'; and (5) the doctor's specialization." *Forsyth v. Comm'r of Soc. Sec.*, 503 F. App'x 892, 893 (11th Cir. 2013) (citing 20 C.F.R. §§ 404.1527(c), 416.927(c)).

### 1. Alexandre Todorov, M.D.

Plaintiff argues that the ALJ erred in rejecting Dr. Todorov's testimony and opinions at the second hearing regarding Plaintiff's manipulative limitations. (Doc. 23, p. 8). Dr. Todorov found Plaintiff could not do repetitive kinds of activities with her hands. (Doc. 23, p. 8; Tr. p. 103). In the decision, the ALJ found:

> Dr. Todorov's testimony regarding the use of the claimant's upper extremities was also not entirely consistent. For example, he testified the record showed no evidence of the claimant having ongoing issues with carpal tunnel syndrome, but he also stated the claimant could not use her hands for repetitive movements. He stated neuropathy was not really an issue and he did not recommend additional EMG testing. He opined the claimant could use her extremities all the time, but stated that she could not engage in continuous use of the upper extremities. This is not entirely consistent with the claimant's, treatment records which often reflect the claimant having normal upper extremity strength and a normal range of motion, and which generally [d]o not reflect significant deficits in grip strength (3F/16; 5F/20; 13F/27, 40; 23F/3). Since the claimant's carpal tunnel release, the claimant has not required

> significant treatment for carpal tunnel syndrome and she had a good recovery after her carpal tunnel release (13F/27). Nonetheless and to give some deference to the claimant's subjective allegations, the undersigned has included manipulative limitations to account of the claimant's history of carpal tunnel release and polyneuropathy with chronic pain syndrome. It further bears noting that when inquired by the undersigned if "repetitive " was a vocational term in the Dictionary of Occupational Title (D.O.T.) regarding manipulative functionality, the vocational expert testified in the negative. The vocational expert testified that the appropriate DOT functional terms for manipulative and exertional limitations are: constant, frequent and occasional.

(Tr. 34).

Plaintiff contends that in a prior decision, the ALJ afforded Dr. Todorov's opinion significant weight and found his opinion well supported, but failed to explain in the newest decision why her opinion changed to affording his opinion only partial weight. (Doc. 23, p. 9-10). This argument lacks merit. As Plaintiff acknowledges, the prior decision was vacated by the Appeals Council and was therefore not a final decision reviewable by this Court. *See Atkins v. Comm'r, Soc. Sec. Admin.*, 596 F. App'x 864, 868 (11th Cir. 2015) ("[T]he ALJ's decision never became final because the Appeals Council vacated it in May 2010.").

Overall, the ALJ provided several reasons to discount Dr. Todorov's opinion, including that his testimony on the use of Plaintiff's upper extremities was inconsistent. (Tr. 34). The ALJ found Dr. Todorov testified that Plaintiff had no ongoing issues with carpal tunnel syndrome, did not recommend additional EMG testing, and testified Plaintiff could use her extremities all the time. According to the

ALJ, these statements conflict with Dr. Todorov's testimony that Plaintiff could not use her hands for repetitive movements. (Tr. 34). The ALJ also noted, that Plaintiff had normal upper extremity strength and a normal range of motion, and generally had no significant deficit in grip strength. (Tr. 34). And the ALJ noted that after her carpal tunnel surgery, she did not require significant treatment and had a good recovery from the surgery. (Tr. 34). The ALJ cited reasons to give partial weight to Dr. Todorov's opinion. Even so, because the Court is remanding this case on other grounds, the Court will require the Commissioner to reconsider Dr. Todorov's opinion.

### 2. J. Thomas Beld, M.D.

Plaintiff argues that the ALJ erred in affording little weight to treating psychiatrist Dr. Beld's opinion. (Doc. 23, p. 13). In the decision, the ALJ:

> gives little weight to the mental impairment questionnaire completed by Dr. Thomas Beld (19F). Dr. Beld assessed the claimant to have marked functional limitations in each of the four areas of broad mental functioning (19F/5). These assessments are highly inconsistent with Dr. Beld's own treatment notes that routinely reflect the claimant having intact recent and remote memory and intact attention and concentration (15F/11, 15, 23, 34, 54; 21F/5, 8). The claimant has also reported to Dr. Beld that she had been able to make friends and his treatment notes do not reflect the claimant having an inability to care for herself (15F/29). Additionally, there are inconsistencies within the questionnaire responses themselves. For example, when asked to identify the claimant's signs and symptoms, Dr. Beld did not indicate the claimant having any memory problems (19F/2). However, he then assessed the claimant to have a seriously limited ability to remember work like procedures (19F/3). Moreover, while the

> claimant's symptoms have varied at times, Dr. Beld's treatment notes often reflect the claimant having improvement and that she was doing well (15F/9, 19, 29, 31, 33; 21F/4, 6, 7).

(Tr. 34). Similar to the consideration of Dr. Todorov's opinion, the ALJ gave good reasons to discount Dr. Beld's opinion. In sum, the ALJ found Dr. Beld's opinion that Plaintiff had marked functional limitations to be inconsistent with his own treatment notes, Plaintiff's ability to make friends, and her ability to care for herself. Still, because the Court is remanding this case on other grounds, the Court will require the Commissioner to reconsider Dr. Beld's opinion.

### III.  Conclusion

For the reasons discussed above, the decision of the Commissioner is **REVERSED and REMANDED** such that this action is remanded under sentence four of 42 U.S.C. § 405(g) for the Commissioner to reconsider the step five findings and reconsider the opinions of Dr. Todorov and Dr. Beld. The Clerk of Court is directed to enter judgment consistent with this opinion, terminate any motions and deadlines, and afterward close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on March 10, 2023.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of Record
Unrepresented Parties